CMM:AXB
F. #2020R01096

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | I N F O R M A T I O N |
| - against - | Cr. No. _____<br>(T. 18, U.S.C., §§ 1040(a)(2), |
| KONSTANTINO ZARKADAS, | 1040(b)(1), 1343, 981(a)(1)(C) and<br>3551 et seq.; T. 21, U.S.C., § 853(p); |
| Defendant. | and T. 28, U.S.C., § 2461(c)) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

<u>The COVID-19 Pandemic in the United States</u>

1.  In or about December 2019, a novel coronavirus, SARS-CoV-2 (the "coronavirus"), was first detected in Wuhan, Hubei Province of the People's Republic of China, causing outbreaks of the coronavirus disease COVID-19 that have since spread globally.  On or about January 31, 2020, the Secretary of Health and Human Services declared a national public health emergency under 42 U.S.C. § 247d as a result of the spread of COVID-19 to and within the United States.  On or about March 11, 2020, the Director-General of the World Health Organization characterized COVID-19 as a pandemic.  On or about March 13, 2020, the President of the United States issued Proclamation 9994 declaring a national emergency beginning on March 1, 2020, as a result of the rapid spread of COVID-19 within the United States.

The Paycheck Protection Program

2. On or about March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The CARES Act was a federal law designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

3. To obtain a PPP loan, qualifying businesses were required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required recipient businesses, through an authorized representative, to acknowledge the program rules and make certain affirmative certifications to establish eligibility for the PPP loan. For example, in the PPP loan application, recipient businesses, through an authorized representative, were required to state, among other things, their average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the businesses were eligible to receive under the PPP. The recipient businesses were also required to provide documentation supporting the information contained in the PPP loan application.

4. PPP loan proceeds were required to be used by the recipient businesses on certain permissible expenses, to wit: payroll costs, interest on mortgages, rent and utilities. The PPP allowed the interest and principal on a PPP loan to be entirely forgiven if

the recipient businesses spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain percentage for payroll costs.

5. The PPP was overseen by the Small Business Administration ("SBA"), which had authority over all PPP loans.  Individual PPP loans, however, were issued and approved by private lenders, who received and processed PPP loan applications and supporting documentation and, following SBA approval, made loans using the lenders' own funds.

The Economic Injury Disaster Loan Program

6. The Economic Injury Disaster Loan ("EIDL") program was also overseen by the SBA and was designed to provide long-term, low-interest loans for small businesses affected by various natural and economic disasters.  The CARES Act provided funding for EIDL loans for businesses affected by the COVID-19 pandemic.  In contrast to the PPP, EIDL loan amounts were determined based on the recipient businesses' historical revenue and disbursed directly by the SBA.

The Defendant and His Fraud Scheme

7. The defendant KONSTANTINO ZARKADAS was a resident of Glen Cove, New York.  ZARKADAS was associated with numerous corporate entities (the "Subject Entities"), through which he committed the fraud described herein.

8. Between March 30, 2020 and September 1, 2020, both dates being approximate and inclusive, the defendant KONSTANTINO ZARKADAS engaged in a scheme to defraud the SBA and several financial institutions administering the PPP and EIDL programs of federal COVID-19 emergency-relief funds meant for distressed small businesses.  It was a part of the scheme to defraud that ZARKADAS submitted, or caused to

be submitted, at least 11 online loan applications to obtain funds through the PPP and EIDL programs for the Subject Entities.   It was further a part of the scheme to defraud that these loan applications and certain supporting documentation contained materially false and fraudulent information, including, but not limited to, the Subject Entities' number of employees, payroll costs and intended use of the loan proceeds, all of which was specifically designed to mislead the SBA and financial institutions administering the PPP and EIDL programs into disbursing various loans, which they did.

9.    In total, between March 30, 2020 and September 1, 2020, both dates being approximate and inclusive, as a result of this fraudulent scheme, the SBA and financial institutions administering the PPP and EIDL programs wire-transferred sums totaling approximately $3.7 million in PPP and EIDL loans for the Subject Entities to bank accounts that the defendant KONSTANTINO ZARKADAS established at bank branches in the Eastern District of New York and elsewhere.

10.    Shortly after receiving these loan proceeds, the defendant KONSTANTINO ZARKADAS engaged in numerous financial transactions designed to conceal the true nature and source of the funds, including electronically transferring certain of the loan proceeds between various bank accounts that ZARKADAS owned and controlled. ZARKADAS then utilized the laundered loan proceeds to enrich himself, including by discharging personal debts and making extravagant purchases.   For example, on or about June 29, 2020, ZARKADAS used approximately $24,500 in EIDL loan proceeds to purchase a Rolex wristwatch.   Thereafter, on or about July 16, 2020, ZARKADAS used approximately $194,915.42 in PPP funds to partially finance a yacht, which sum he paid by personal check.   To conceal the true nature and source of these funds, ZARKADAS made

the check payable to his sister, who was not the ultimate intended recipient of the funds, and, in the check's memo line, wrote "repayment for payroll," when, as ZARKADAS then and there well knew and believed, the check would not be used for payroll or any other permissible purpose under the PPP program.

<u>COUNT ONE</u>
(Disaster Relief Fraud)

11. The allegations contained in paragraphs one through ten are realleged and incorporated as if fully set forth in this paragraph.

12. In or about and between March 2020 and July 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KONSTANTINO ZARKADAS did knowingly and intentionally make one or more materially false, fictitious, and fraudulent statements and representations, and make and use one or more false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and representations, in connection with a procurement of property and services related to an emergency declaration under Section 501 of the Stafford Act, to wit: Proclamation 9994 of March 13, 2020 by the President of the United States of America Declaring a National Emergency Concerning a Novel Coronavirus Disease (COVID-19) Outbreak, which benefits were authorized, transported, transmitted, transferred, disbursed and paid in and affecting interstate and foreign commerce.

(Title 18, United States Code, Sections 1040(a)(2), 1040(b)(1) and 3551 <u>et seq</u>.)

COUNT TWO
(Wire Fraud)

13.  The allegations contained in paragraphs one through ten are realleged and incorporated as if fully set forth in this paragraph.

14.  In or about and between March 2020 and July 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KONSTANTINO ZARKADAS did knowingly and intentionally devise a scheme and artifice to defraud the SBA and one or more financial institutions administering the PPP and EIDL programs, and to obtain money and property from the SBA and said financial institutions by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: fraudulent online applications for one or more PPP and EIDL loans for the Subject Entities.

(Title 18, United States Code, Sections 1343 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT TWO

15.  The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense, including but not limited to:

      (a)      one (1) Rolex Sky-Dweller with a Blue dial;

      (b)      one (1) Rolex Yacht-Master II;

      (c)      one (1) Rolex Day-Date with gold and diamond; and

      (d)      one (1) Cartier Ladies Roadster.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      (a)      cannot be located upon the exercise of due diligence;

      (b)      has been transferred or sold to, or deposited with, a third party;

      (c)      has been placed beyond the jurisdiction of the court;

      (d)      has been substantially diminished in value; or

      (e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

      (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

JACQUELYN M. KASULIS
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2020R01096

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

KONSTANTINO ZARKADAS,

Defendant.

# INFORMATION

(T. 18, U.S.C., §§ 1040(a)(2), 1040(b)(1), 1343, 981(a)(1)(C) and 3551 et seq.; T. 21, U.S.C., § 853(p); and T. 28, U.S.C., § 2461(c))

*A true bill.*

_____

*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ A.D. 20 _____

_____

*Clerk*

*Bail, $* _____

_____

***Anthony Bagnuola, Assistant U.S. Attorney (631) 715-7849***